## AFFIDAVIT OF SPECIAL AGENT SEAN P. SULLIVAN

I, Sean P. Sullivan, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being duly sworn, depose and state as follows:

## INTRODUCTION

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so since 2014. I am responsible for the investigation of violations of and the enforcement of the federal firearms laws. I am currently assigned to a joint task force comprised of ATF agents and detectives from Southeastern Massachusetts. I have participated in numerous investigations focusing on Controlled Dangerous Substances ("CDS"), trafficking, gangs, and illegal firearms.  I have conducted covert surveillance of suspected CDS traffickers; interviewed numerous individuals involved in gangs and the CDS trafficking trade; participated in several Title III wiretap investigations as a monitor and member of surveillance teams; participated in the execution of numerous state and federal search and arrest warrants involving CDS traffickers and violent offenders; and participated in the seizure of numerous firearms and controlled dangerous substances.

2.      As an ATF Special Agent, I am authorized to investigate violations of the laws of the United States, including violations of federal firearms laws in Title 18 of the United States Code.  During my law enforcement career, I have received specialized training regarding the activities of firearms traffickers and other criminal firearm activity, including the methods used to manufacture, transport, and deal in firearms.

3.      I have participated in various aspects of firearm related investigations.  I have participated in firearm investigations utilizing confidential informants and undercover law enforcement agents and officers.  I have prepared affidavits for federal court in support of applications for criminal complaints, search warrants, and tracking warrants.  I have also

1

conducted and coordinated electronic and physical surveillance of individuals involved in violations of federal firearms laws.

4.      Based on my training and experience, I am aware that Title 18, United States Code, Section 922(a)(1)(A) makes it a federal offense for any individual who is not a licensed dealer within the meaning of Title 18, United States Code, Chapter 44, to engage in the business of dealing in firearms.

### PURPOSE OF AFFIDAVIT

5.      I am submitting this affidavit in support of:

   a.      a criminal complaint charging Jacob LINHARES (DOB: xx/xx/1987) with dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A);

   b.      an application for the issuance of a Search Warrant for LINHARES' residence at 8 Fairview Avenue, Dennis, MA (the "TARGET LOCATION"), further described in Attachment A-1; and

   c.      an application for the issuance of a Search Warrant for LINHARES' vehicle, a Chevrolet pick-up truck, dark green in color and bearing Massachusetts registration 9PV372 (the "TARGET VEHICLE"), further described in Attachment A-2.

6.      As explained more fully below, on May 25, 2021, an ATF undercover agent ("UC-1") purchased a Polymor80 Inc. (P80 Tactical), Model PFS9ss, 9mm pistol with 2 six round magazines from Jacob LINHARES, which was later determined to be a Privately Made Firearm ("PMF"), also known as a "ghost gun" – a firearm that has been manufactured by an individual and not by a firearms manufacturing company.  Subsequently, on June 4, UC-1 purchased a Polymor80 Inc. (P80 Tactical), Model PF940C, .40 caliber pistol with one magazine from LINHARES, which was also determined to be a PMF.  Finally, on June 10, 2021 UC-1 purchased a Polymer80 Inc. (P80 Tactical), Model PF940C, .9mm Pistol, with one magazine from LINHARES, which was also determined to be a PMF.

7.      As a result, I submit there is probable cause that LINHARES engaged in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A).

Furthermore, I submit that there is probable cause that the TARGET LOCATION and TARGET VEHICLE as described in Attachments A-1 and A-2, contain records and other evidence, fruits, and instrumentalities as described in Attachment B, of that offense.

8.      I have personally participated in this investigation and am familiar with the relevant facts and circumstances based upon: (a) my personal knowledge; (b) my review of records related to this investigation; (c) information provided to me by other law enforcement officers and agents; and (d) my experience and training as a criminal investigator.

9.      Because this affidavit is submitted for the limited purpose of establishing probable cause that LINHARES engaged in the business of dealing in firearms without a license, and that evidence, fruits, and instrumentalities of that offense is located at the TARGET LOCATION and in the TARGET VEHICLE, I have not included each and every fact known to me or other law enforcement officers involved in this investigation.  Rather, I have included only those facts that I believe are sufficient to establish probable cause for the issuance of a criminal complaint and search warrants.

## BACKGROUND OF THE INVESTIGATION

10.      On May 21st and 23rd, 2021, an ATF agent working in an undercover capacity ("UC-1") exchanged text messages with Jaqueline Linhares via her cell phone number (508) 651-6449.[1]  During the course of these text messages UC-1 informed Mrs. Linhares that UC-1 wanted to purchase two PMF pistols.  Mrs. Linhares advised UC-1 that she would put UC-1 in touch with her husband Jacob LINHARES, "because he knows everything."

11.      On May 23, 2021, at approximately 7:45pm, Mrs. Linhares contacted UC-1.  The following was the text message exchange between UC-1 and Mrs. Linhares.

7:45pm (LINHARES) Yoo
8:58pm (UC-1) YO

---

[1] Investigators believes that Mrs. Linhares is the wife of Jacob LINHARES.

9:00pm (LINHARES) My husband said he hit you up and you didn't respond just wondering what was up
He said he hit you a few times
9:02pm (UC-1) My girl was up my ass
I can call him now I'd tagts cool
9:05pm (LINHARES) Yea that's fine I'll tell him to be near his phone

On May 23, 2021, UC-1 had missed calls on UC-1's cellular telephone from the below listed numbers:

- 10:42am (508) 651-6449
- 3:27pm (774) 464-9510

A query of commercially accessible law enforcement databases for the below listed telephone numbers revealed the following:

- (774) 464-9510 – Associated with Barnstable, MA
- (508) 651-6449 – Associated with Jacqueline MAHONEY[2]

**PROBABLE CAUSE**

May 25, 2021: Controlled purchase of a firearm from LINHARES

12.      On May 25, 2021, UC-1 purchased a PMF from LINHARES.  On that morning prior to the controlled purchase, UC-1 made two consensually monitored and audio-recorded telephone calls with LINHARES via (774) 464-9510.  UC-1 and LINHARES ultimately agreed to meet at the IHOP at the Capetown Plaza.   At approximately 1:04 p.m., UC-1 arrived at the IHOP and parked in a parking space between the IHOP and a Verizon store.  At approximately 1:05 p.m., UC-1 placed a consensually monitored and audio-recorded telephone call to LINHARES via (774) 464-9510, advised LINHARES that UC-1 had arrived at the IHOP, and provided a description of UC-1's vehicle.  LINHARES subsequently advised that he was pulling into the parking lot.  LINHARES arrived alone and was operating a Chevrolet pick-up truck, dark green in

---

[2] Law enforcement believes that Mahoney is the maiden name of Jaqueline Linhares.

color and bearing Massachusetts registration 9PV372 (the, "TARGET VEHICLE").[3]

13.     There was a brief conversation where LINHARES informed UC-1 that he had made 15 to 20 firearms, and said he had never had any complaints.  LINHARES also said he typically made $800 profit.  Law enforcement then observed LINHARES walk to the rear of the TARGET VEHICLE, reach in the bed area, retrieve a red and black tool bag, then walk and open the driver's side door to his vehicle.  LINHARES next opened the passenger door to UC-1's vehicle and placed the bag on the floor in front of the front passenger seat.  UC-1 asked LINHARES to show him the pistol.  LINHARES opened the bag, and removed a red handkerchief, which had been wrapped around the pistol and magazines.  UC-1 next handed LINHARES the agreed upon $1,500. in agency funds in exchange for the pistol.  UC-1 subsequently took possession of the pistol and two magazines.  LINHARES would later tell UC-1 he put three mags through it recently and it worked "beautifully."



14.     After the controlled purchase, LINHARES informed UC-1 he would show UC-1

_____

[3] A query of Massachusetts registration 9PV372 revealed the vehicle to be a 2005 Chevrolet, Model K1500, green in color and registered to LINHARES.

his but he keeps it in the bed of the TARGET VEHICLE.  UC-1 understood LINHARES to mean he carries a firearm in the bed of the TARGET VEHICLE.  LINHARES next informed UC-1 that he could obtain "19's, 23's, 26's and 27's" and referenced "9's and 40 cals".  UC-1 understood LINHARES to mean he could obtain the parts to build and sell .9mm and .40 caliber Glock style PMFs.  LINHARES also said he could get plenty of "19's and 26's" in all colors.

15.     At the conclusion of the transaction, LINHARES returned to the TARGET VEHICLE and left the scene.  UC-1 then travelled to a predetermined location and turned over the firearm to other agents.  Subsequent to the controlled buy, UC-1 reviewed the RMV photo of Jacob LINHARES and confirmed that the individual who sold UC-1 the PMF on May 25th, was the same person depicted on the RMV photo.

June 4, 2021: Controlled purchase of a firearm from LINHARES

16.     On June 4, 2021, UC-1 purchased a PMF from LINHARES.  On June 3, 2021, UC-1 received a telephone call from LINHARES via (774) 464-9510, which UC-1 missed but immediately returned.  LINHARES informed UC-1 he only had "one 23" right now, which UC-1 understood to mean LINHARES had a Glock style model 23, .40 caliber pistol for sale. LINHARES told UC-1 "the sooner the better" so he could make more orders and that the sale of the pistol was first come first serve.  At UC-1's request, asked LINHARES to text UC-1 2 (two) photographs of the firearm he was offering for sale, and LINHARES complied.





The two then agreed to meet the following day at Capetown Plaza located at 790 Iyannough Road, Hyannis, MA, in order for LINHARES to sell UC-1 the discussed PMF.

17.     On June 4, 2021, at approximately 12:47pm, UC-1 arrived at the Capetown Plaza and parked in a parking space opposite a Bank of America ATM.  At approximately 1:15pm, LINHARES arrived alone in the TARGET VEHICLE and parked next to UC-1's vehicle. LINHARES then exited the TARGET VEHICLE and opened a tool box that was affixed to the TARGET VEHICLE's bed and removed what was later determined to be a Glock style model 23, .40 caliber pistol wrapped inside a red handkerchief.  LINHARES then entered UC-1's vehicle's front passenger seat.

18.     Once inside, LINHARES exchanged the firearm for a quantity of agency funds.

LINHARES informed UC-1 he had tested the firearm.







After the transaction, LINHARES admitted to UC-1 that he makes firearms at his home.[4]

LINHARES also admitted that he went to 4 different companies to acquire the parts he needed to

make the pistol he had just sold to UC-1.  LINHARES further advised UC-1 that his new cell

phone number is (508) 280-4808.

19.     At the conclusion of the transaction, LINHARES returned to the TARGET

VEHICLE and left the scene.  UC-1 then travelled to a predetermined location and turned over the

firearm to other agents.  UC-1 also confirmed that the individual who sold UC-1 the firearm on

June 4th was that same person who sold UC-1 the firearm on May 25th.



---

[4] Law enforcement later determined LINHARES resides at 8 Fairview Avenue, Dennis, MA (the "TARGET LOCATION").

June 10, 2021: Controlled purchase of a firearm from LINHARES

20.     On June 10, 2021, UC-1 purchased a PMF from LINHARES.  On June 9, 2021, between 8:55 a.m. and 10:16 a.m., prior to the controlled purchase, UC-1 exchanged text messages and phone calls with LINHARES via (508) 280-4808.  LINHARES told UC-1 he had a pistol for sale.  LINHARES agreed to send UC-1 a photograph of the pistol he was offering to sell to UC-1, and subsequently did.  LINHARES also confirmed it would be the same number, which UC-1 understood LINHARES to mean he was selling the pistol for $1,500.



21.     At approximately 1:48pm on June 10, 2021, UC-1 arrived at the Capetown Plaza and parked in a parking space opposite the Bank of America ATM.  UC-1 observed LINHARES' 2005 Chevrolet, Model K1500, green in color bearing Massachusetts registration 9PV372 (the "TARGET VEHICLE") already backed into a spot opposite the Bank of America ATM.

22.     UC-1 and LINHARES greeted each other outside their vehicles and then entered UC-1's vehicle.  LINHARES brought with him a black bag.  Once inside the vehicle, LINHARES

exchanged one Glock style pistol and magazine for $1,500 in agency funds.  After the transaction,

LINHARES informed UC-1 that the "Glock" he just sold to UC-1 was his favorite pistol, but he

had more coming.







23.     At the conclusion of the transaction, LINHARES returned to the TARGET

VEHICLE and left the scene.  UC-1 then travelled to a predetermined location and turned over the

firearm to other agents.  UC-1 also confirmed that the individual who sold UC-1 the firearm on

June 10th, was that same person who sold UC-1 the firearm on May 25th and June 4th.

Inspection of the Privately Made Firearms (PMFs)

24.     On May 26, June 8, and June 10 of 2021, an agent with the ATF conducted

successful test fires of the PMFs obtained from LINHARES on May 25th, June 4th, and June

10th, and determined that all three are firearms as defined in Title 18, United States Code, Chapter

44, Section 921(a)(3).

25.     Furthermore, recent records check determined that LINHARES does not possess a

Federal Firearms License to manufacture or deal in firearms, and thus is not a licensed dealer

within the meaning of Title 18 United States Code, Chapter 44.

Law Enforcement's Efforts to Confirm LINHARES Residence

26.     A query of the Commonwealth of Massachusetts, Department of Criminal Justice

Information Services ("DCJIS") revealed that LINHARES' Massachusetts driver's license reflects

that he resides at 8 Fairview Avenue, Dennis, MA.  It specifically lists this address as

LINHARES' mailing and residential address.

27.     A query of the Massachusetts DCJIS pertaining to LINHARES' criminal history

revealed that he resides at 8 Fairview Avenue, Dennis, MA.

28.     A query of the Massachusetts DCJIS registry of motor vehicles (RMV) revealed that LINHARES appears to have renewed the registration for the TARGET VEHICLE on March 8, 2021.

29.     On May 29, 2021, surveillance was conducted of 8 Fairview Avenue, Dennis, MA. During surveillance, LINHARES' registered vehicle (the "TARGET VEHICLE") was observed parked in the yard located at 8 Fairview Avenue, Dennis, MA.

30.     On June 11, 2021, UC-1 had occasion to exchange text messages with LINHARES via (508) 280-4808.  During these text message exchanges UC-1 questioned LINHARES' living arrangements.  The following is a portion of the text messages exchanged on that day.

UC: "You got your situation straight?  I dont want tou using the advance for a new crib"

"You got me concerned when you said you were moving"

LINHARES: "No I'm still moving just after we do are thing"

31.     A query of (508) 280-4808, via a commercially accessible law enforcement database, revealed the number is associated with LINHARES with a residential address of 8 Fairview Avenue, Dennis, MA.

## Firearm Traffickers Use of Residences and Vehicles Generally

32.     As established above, there is probable cause to believe that LINHARES violated 18 U.S.C. § 922(a)(1)(A), and evidence that offense will be found at the TARGET LOCATION and TARGET VEHICLE.  Based upon my experience and the experience of other law enforcement officers who have participated in the execution of search warrants at the residences of firearm traffickers, I am aware that the following kinds of firearm-related evidence have typically been recovered during searches of firearm traffickers' residences and vehicles:

      a.     Firearms, explosives, ammunitions, firearm components, firearm accessories, tactical equipment and other items pertaining to the domestic

and international trafficking of firearms, including, but not limited to, handguns, pistols, revolvers, rifles, machine guns, and other weapons, and any records of receipts pertaining to firearms, parts, accessories and ammunition;

b.    Records and documents showing indicia of residency;

c.    Books, records, receipts, bills of lading, notes, ledgers, papers, business records, packaging, and other items relating to the purchase, possession, receipt, transfer, manufacture or distribution of firearms, including, but not limited to, materials, chemicals, tools and literature related to firearms;

d.    Wireless telephones, telephone bills, telephone note pads and notes, contracts and other documents reflecting the ownership, subscription information, and the use of the telephones, reasonably believed to be possessed or used by subject of this investigation in furtherance of a crime;

e.    Photographs, including still photographs, negatives, video recordings, slides, film, undeveloped film, digital photos and the contents therein, in particular, photographs of co-conspirators, or those relating to purchase, possession, receipt, transfer, manufacture or distribution of firearms;

f.    Contact information relating to suppliers, manufacturers and purchasers involved in the purchase, possession, receipt, transportation, transfer, manufacture or distribution of firearms;

g.    Correspondence pertaining to the purchase, possession, receipt, transfer, manufacture or distribution of firearms, whether transmitted or received using a computer, wireless telephone, a facility or means of interstate commerce, common carrier, or mail; and

h.    Safes or other locked containers and their contents to be searched for the listed items.

## **CONCLUSION**

33.    Based upon the foregoing, as well as my training and experience, I submit that there is probable cause that between May 25, 2021 and June 10, 2021, Jacob LINHARES engaged in the unlicensed dealing of firearms, in violation of 18 U.S.C. 922 (a)(1)(A).  Accordingly, I respectfully request that this Court issue a criminal complaint charging Jacob LINHARES with a violation of 18 U.S.C. § 922(a)(1)(A).

34.    Furthermore, based on the information described above, I believe that the TARGET LOCATION and TARGET VEHICLE, as described in Attachments A-1 and A-2, contain evidence, fruits, and instrumentalities of firearm trafficking, as described in Attachment B.

Accordingly, I respectfully request that a search warrant be issued for the search of the TARGET

LOCATION and TARGET VECHILE described in Attachments A-1 and A-2.

/s/ *Sean P. Sullivan*
SEAN P. SULLIVAN
Special Agent
Bureau of Alcohol, Tobacco, Firearms,
and Explosives

Subscribed and sworn to me by telephonic attestation, this 14th day of June, 2021.

_____
HONORABLE DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

<u>**ATTACHMENT A-1**</u>
**(Description of the TARGET LOCATION to be Search)**

    The premise to be searched is located 8 Fairview Avenue, Dennis, MA (the "TARGET LOCATION").  The residence is a one-story wood frame dwelling with a pitched roof and clapboard side grey in color with dark blue shutters.  The residence has at least one shed/out building located on the "D" side of the residence.  The areas to be searched at the residence includes bedrooms and all common rooms and areas, to include garages, annexes, attics, basements, porches, and sheds.



**ATTACHMENT A-2**
**(Description of the TARGET VEHICLE to be Search)**

The vehicle to be searched is a Chevrolet pick-up truck, dark green in color and bearing Massachusetts registration 9PV372 (the "TARGET VEHICLE").

**ATTACHMENT B**
**(Items to be Seized)**

I.      All records, in whatever form, and tangible objects that constitute evidence, fruits,

or instrumentalities of violations of 18 U.S.C. § 18 U.S.C. 922 (a)(1)(A), including:

A.  Records and tangible objects pertaining to the following people, entities, physical

    addresses, telephone numbers, bank accounts, websites, e mail addresses, IP addresses:

Jacob LINHARES
Jacqueline Linhares, nee (Mahoney)

Telephone numbers
- (508) 651-6449
- (774) 464-9510
- (508) 280-4808

B.  Records and tangible objects pertaining to the following topics:

- firearm purchases
- firearm sales
- firearm manufacturing

C.  Records and tangible objects pertaining to the payment, receipt, transfer, or storage of

    money or other things of value by Jacob LINHARES or any one of the names listed

    above, including, without limitation:

1.  Bank, credit union, investment, money transfer, and other financial accounts;

2.  Credit and debit card accounts;

3.  Tax statements and returns;

4.  Business or personal expenses;

5.  Income, whether from wages or investments;

6.  Loans;

D. For any computer hardware, computer software, mobile phones, or storage media called for by this warrant or that might contain things otherwise called for by this warrant ("the computer equipment"):

    1. evidence of who used, owned, or controlled the computer equipment;

    2. evidence of the presence or absence of malicious software that would allow others to control the items, and evidence of the presence or absence of security software designed to detect malicious software;

    3. evidence of the attachment of other computer hardware or storage media;

    4. evidence of counter forensic programs and associated data that are designed to eliminate data;

    5. evidence of when the computer equipment was used;

    6. passwords, encryption keys, and other access devices that may be necessary to access the computer equipment;

    7. records and tangible objects pertaining to accounts held with companies providing Internet access or remote storage; and

E. Records and tangible objects relating to the ownership, occupancy, or use of the premises to be searched (such as utility bills, phone bills, rent payments, mortgage payments, photographs, insurance documentation, receipts and check registers).

II.    All computer hardware, computer software, and storage media. Offsite searching of these items shall be limited to searching for the items described in paragraph I.

III.    During the execution of the search of the TARGET LOCATION described in Attachment A-1, law enforcement personnel are authorized to press the fingers (including thumbs) of individuals found at the TARGET LOCATION to the sensor of the subject device and/or to hold the device in front of their faces.

## DEFINITIONS

For the purpose of this warrant:

A. "Computer equipment" means any computer hardware, computer software, mobile phone, storage media, and data.

B. "Computer hardware" means any electronic device capable of data processing (such as a computer, smartphone, cell/mobile phone, or wireless communication device); any peripheral input/output device (such as a keyboard, printer, scanner, monitor, and drive intended for removable storage media); any related communication device (such as a router, wireless card, modem, cable, and any connections), and any security device, (such as electronic data security hardware and physical locks and keys).

C. "Computer software" means any program, program code, information or data stored in any form (such as an operating system, application, utility, communication and data security software; a log, history or backup file; an encryption code; a user name; or a password), whether stored deliberately, inadvertently, or automatically.

D. "Storage media" means any media capable of collecting, storing, retrieving, or transmitting data (such as a hard drive, CD, DVD, or memory card).

E. "Data" means all information stored on storage media of any form in any storage format and for any purpose.

F. "A record" is any communication, representation, information or data. A "record" may be comprised of letters, numbers, pictures, sounds or symbols.

## RETURN OF SEIZED COMPUTER EQUIPMENT

If the owner of the seized computer equipment requests that it be returned, the government will attempt to do so, under the terms set forth below. If, after inspecting the seized computer equipment, the government determines that some or all of this equipment does not contain

contraband or the passwords, account information, or personally-identifying information of victims, and the original is no longer necessary to retrieve and preserve as evidence, fruits or instrumentalities of a crime, the equipment will be returned within a reasonable time, if the party seeking return will stipulate to a forensic copy's authenticity (but not necessarily relevancy or admissibility) for evidentiary purposes.

If computer equipment cannot be returned, agents will make available to the computer system's owner, within a reasonable time period after the execution of the warrant, copies of files that do not contain or constitute contraband; passwords, account information, or personally-identifying information of victims; or the fruits or instrumentalities of crime.

For purposes of authentication at trial, the Government is authorized to retain a digital copy of all computer equipment seized pursuant to this warrant for as long as is necessary for authentication purposes.